IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GARY THAUT,<br><br>            Petitioner,<br><br>    vs.<br><br>ATTORNEY GENERAL OF THE<br>STATE OF MONTANA,<br><br>            Respondents. | Cause No. CV 15-80-H-DLC-JTJ<br><br><br>FINDINGS AND<br>RECCOMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Gary Thaut's application for writ of habeas corpus under 28 U.S.C. § 2254. Thaut is a state prisoner proceeding pro se.

## I.      Background

The State of Montana Charged Thaut with Assault on a Peace Officer in Montana's Third Judicial District, Powell County; the State alleged the incident occurred on April 18, 2009, at the Montana State Prison, where Thaut was an inmate. Several different attorneys from the Office of the State Public Defender represented Thaut. Ultimately the court appointed conflict counsel William Hooks to represent him.

Thaut wanted to present a mental health disease/defect defense, specifically that due to his ADHD he could not have acted purposely or knowingly. Thaut

1

underwent an evaluation at the Montana State Hospital during the early stages of his case. Apparently, this evaluation did not support Thaut's belief that his ADHD constituted a valid defense. Hooks determined that the law or the facts of the case did not support this defense. Instead, counsel elected to defend Thaut on the theory that the State could not prove the essential elements of the claim, specifically, that the officer involved did not suffer bodily injury.

Thaut's jury trial took place on March 12, 2012. Following the trial, the jury convicted him, and the court sentenced him to a five-year prison sentence and ordered the sentence to run consecutively to a sentence Thaut was already serving.

Thaut filed a timely direct appeal to the Montana Supreme Court where appellate counsel Wendy Holton represented him. Ultimately, Holton filed a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), setting forth her belief that there were no meritorious issues for direct appeal. *State v. Thaut*, Cause No. DA 12-0458, Br. (Dec. 31, 2012). The issues addressed in the *Anders* brief were:

1) Whether Thaut was denied effective assistance of trial counsel due to Hooks' refusal to present the mental health disease/defect defense;

2) Whether it was error for Powell County to remain the trial venue;

3) Whether defense counsel properly questioned jurors during voir dire;

4) Whether it was reversible error for the State and its witnesses to refer to Thaut as "the offender;"

5) Whether there was sufficient evidence to support the verdict.

After an independent examination of the record, the Court granted Holton's motion to withdraw as counsel. The Court dismissed the appeal found there were no non-frivolous issues for appeal. *State v. Thaut*, Cause No. DA 12-0458, (Feb. 27, 2013).

Thaut then filed for post-conviction relief in the trial court. The court ordered the State to file a response to Thaut's petition. In its decision denying Thaut's petition, the trial court grouped Thaut's claims into three general groups: (1) bias by the trial court and the Montana Supreme Court; (2) malicious prosecution; and, (3) ineffective assistance of trial and appellate counsel. (Doc. 9-15 at 3-4.)

In relation to the judicial bias claims, the trial court held that simply because Thaut filed a complaint against the trial judge with the Judicial Standards Commission in the fall before the trial, the judge was not obligated to recuse himself and Thaut failed to provide any case law to support his argument. *Id*. at 4. Additionally, Thaut's claims that the trial court exhibited bias by allegedly threatening him at a pre-trial conference and laughing during voir dire were record based and should have been raised on direct appeal. Because they were not, the claims were procedurally barred. *Id*. The Supreme Court's Order in *State v. Thaut*, Cause No. DA 12-0458 contradicted Thaut's claim that the Montana Supreme Court dismissed his appeal without independently examining the record.

*Id.* Accordingly, the post-conviction court held that this claim, too, lacked merit.

The trial court found that all Thaut's claims relating to malicious prosecution were record based and the he should have raised them on direct appeal. Because Thaut failed to do so, Mont. Code Ann. § 46-21-105(2) barred the claims. *Id.* at 5.

Thaut next claimed that Hooks was ineffective for failing to move for a change of venue. It was Thaut's contention that a jury trial of inmates should never be held close to prisons and that inflammatory news coverage damaged his case. The Court held that Thaut's conclusory assertions did not meet the high standard set forth in *State v. Kingman*, 2001 MT 269, 264 P. 3d 1104. *Id.* at 6. Accordingly, Thaut's trial counsel was not ineffective for failing to file what the trial court deemed to be a frivolous motion. *Id.*

Thaut's next claim was that Hooks was ineffective during voir dire for neglecting to remove a partial member from the jury panel. The court noted that Thaut failed to identify the partial juror or establish how that juror was prevented from fairly assessing the evidence in the case. Relying on an affidavit provided by Hooks, the court noted that counsel reviewed juror questionnaires prior to trial and exercised peremptory challenges accordingly. *Id.* The Court also noted that while a number of the potential jurors acknowledged having connections to the Montana State Prison, the only individual that stated she could not put aside her bias was dismissed for cause. *Id.* Because Thaut did not establish either a partial juror or

trial counsel's ineffectiveness, the claim was denied. *Id*. at 7.

Thaut's claim that Hooks failed to object when the State referred to him as a "more dangerous inmate" was record based, and he should have raised it on direct appeal. *Id*. Moreover, the court noted that a review of the transcript showed the State never actually made this reference so it was without merit. *Id*. Likewise, Thaut's claim that Hooks neglected to ask him "important questions" was simply an assertion and was not sufficient to establish ineffective assistance. *Id*. Similarly, the affidavit provided by counsel defeated Thaut's claim that Hooks did nothing to prepare an adequate defense. *Id*.

The court next found that Thaut's claim that Hooks was ineffective for failing to raise a mental health defense based upon Thaut's ADHD was also without merit. The evaluation that Thaut underwent did not support his claim. Additionally, his attorney consulted with a separate expert and reviewed Thaut's evaluation. *Id*. at 8. Trial counsel was not ineffective for choosing to forego the defense. *Id*.

In relation to appellate counsel, Thaut claimed Holton expressed anger toward him and failed to adequately review the record prior to the filing of the *Anders* brief. The court determined Thaut failed to demonstrate prejudice. *Id*. Additionally, the Montana Supreme Court independently reviewed the record prior to the dismissal of Thaut's appeal and agreed with Holton's assessment of the

merits of the potential appellate claims. Thus, any alleged deficiency by appellate counsel could not have prejudiced Thaut. *Id*.

Thaut appealed the denial. See *Thaut v. Montana*, DA 14-0461, Br. (filed Jan. 2, 2015). Thaut raised seven issues on appeal:

1. Whether Judge Dayton should have recused himself;

2. Whether Thaut was denied effective assistance of counsel when his attorney refused to raise a mental disease/defect defense;

3. Whether Thaut was denied effective assistance of counsel by improper questioning of jurors during voir dire;

4. Whether Thaut was denied effective assistance of counsel when his attorney failed to request a lesser included jury instruction;

5. Whether Powell County was the proper trial venue;

6. Whether it was reversible error for the State and its witnesses to refer to Thaut as "the Offender;"

7. Whether there was sufficient evidence to support the verdict.

The Montana Supreme Court affirmed the trial court's denial of Thaut's petition for post-conviction relief. *Thaut v. Montana*, DA 14-0461, (Aug. 11, 2015). The Court found that because Thaut could have raised the issue pertaining to Judge Dayton's recusal on direct appeal, but did not do so, this created a procedural bar to the claim, pursuant to M.C.A. § 46-21-105(2). *Thaut*, at ¶6. Thaut's claims 5, 6, and 7, were all raised on direct appeal and addressed in the *Anders* brief filed by Holton where they were determined to be "wholly frivolous."

6

*Id.*  Additionally, the Court held that these claims, too, were barred by M.C.A. § 46-21-105(2).  Finally, the Court rejected Thaut's claims pertaining to ineffective assistance of trial and appellate counsel because Thaut failed to adequately establish either prong of the *Strickland* test.  *Id.* at ¶ 7.

## II.  Thaut's Claims

On August 24, 2015, Thaut submitted a petition for a writ of habeas corpus (doc. 1) accompanied by a thirty-three page exhibit (doc. 1-1).  It was unclear exactly what claims Thaut was attempting to advance in his present petition and he was ordered to clarify his petition and complete this Court's standard habeas form. (Doc. 2).  Thaut complied and filed the Amended Petition on September 1, 2015. (Doc. 3).  Subsequently, Thaut filed a supplement to his petition.  (Doc. 4).

From a review of these materials, it appeared Thaut advanced the following claims:

1.  Thaut received ineffective assistance of counsel during voir dire when his attorney failed to perform adequate questioning regarding juror bias (doc. 3, ¶ 13 A(i));

2.  Thaut's right to due process was violated when Judge Dayton refused to recuse himself (*id.*, ¶ 13 B(i));

3.  Venue was not proper in Powell County due to a prevailing bias and Thaut's attorney was ineffective for failing to request a change of venue (*id.*);

Thaut continued to file supplements, which served to obfuscate matters significantly. *See* (Docs. 10-24; 26). Ultimately, this Court determined the interests

of justice warranted appointing Thaut counsel. (Doc. 25).

On March 22, 2016, through counsel, Thaut filed a second amended petition and brief in support. (Docs. 32, 33). In his amended petition, Thaut advanced the following claims:

1. The Montana Supreme Court violated Thaut's Fifth and Fourteenth amendment rights to due process by denying him a meaningful right to appeal (doc. 33 at 7; doc. 34 at 1-9) ;

2. Thaut's trial counsel was ineffective on a number of issues in violation of Thaut's Sixth amendment right to effective assistance of counsel (doc. 33 at 7; doc. 34 at 9-18);

3. Thaut's appellate counsel was ineffective in failing to request corrective action under Mont. R. App. P. 8(6) (doc. 33 at 7; doc. 34 at 18-21).

On May 2, 2016, the State filed a response to the amended petition. (Doc. 38).

The State further separated the claims in the second amended petition as follows:

1. The Montana Supreme Court violated Thaut's Fifth and Fourteenth Amendment rights to due process by denying him a meaningful right to appeal on many of his claims. The Montana Supreme Court on direct appeal could have considered issue outside of the record had Thaut been allowed to develop the record in his PCR proceeding. The state PCR court and the Montana Supreme Court denied Thaut's claims as procedurally barred because they could have been raised on direct appeal, thus creating a Catch-22. The state courts denied him reasonable fact-finding procedures or a meaningful appeal. The PCR court should have appointed counsel for Thaut on PCR, and the Montana Supreme Court adopted the wrong legal standard in evaluation portions of Thaut's PCR appeal. (Doc. 38 at 9-10);

2. (a) Hooks was ineffective in conducting voir dire in that he failed to require a venire person to identify herself for the record, and

therefore it is unknown if she served on Thaut's jury or if defense counsel exercised a peremptory strike.

(b) Hooks also erred in failing to exercise either a peremptory or for-cause challenge on juror Mavrinac. (*Id*. at 10);

3. Trial counsel was ineffective in failing to seek an independent medical evaluation of Thaut to possibly support a defense of mental disease or defect (*id*.);

4. Hooks was ineffective in failing to request a change of venue to another county where there was less association with the prison (*id*.);

5. Thaut's direct appeal counsel, Wendy Holton, was ineffective in failing to request corrective action under Mont. R. App. P. 8(6) to attempt reconstructive action regarding the record from voir dire (*id*.).

The State contends that Thaut's Claim 1 is not exhausted, is procedurally defaulted, and is barred by the statute of limitations. *Id*. at 11 ¶¶ 25-26; 12 at ¶ 27. Likewise, the State contends that Claims 2b and 3 are also barred by the statute of limitations. *Id*. at 11 ¶ 25.

## III. Analysis

For the reasons discussed herein, Thaut's petition fails and should be denied for lack of merit and, as explained more fully below, because his claims do not survive deferential review under the Antiterrorism and Effective Death Penalty Act (AEDPA).

### A. Claim 1: Lack of a meaningful appeal

In relation to this claim, Thaut argues that the postconviction procedure

afforded him by the state, wherein he was not provided counsel, created a Catch-22.  The final result being that Thaut was unable to develop his claims during postconviction and was, therefore, denied meaningful review.  Thaut contends that the end result of the postconviction proceedings and appeal therefrom resulted in a violation of his right to equal protection and due process.  The State counters that this claim is unexhausted, procedurally defaulted, and untimely.

While it is true that Thaut never presented this precise claim to the state courts, this Court is not convinced that there was an available remedy for Thaut to raise this challenge there.  He would have had to preemptively determine that the Montana Supreme Court was going to deny his postconviction appeal in order to make this same argument.  It is unclear exactly how Thaut could have framed or advanced this claim.

But Thaut's claim fails nonetheless.  A habeas claim is cognizable only when it is based upon the ground that an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  It has been long established that prisoners do not "have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Murray v. Giarratano*, 492 U.S. 1 (1989).  Thaut argues that this principle has been called into question in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2010) and *Trevino v. Thaler*, 133 S. Ct. 1911

(2013). *See* (Doc. 34 at 3). At this point in time, however, no such exception exists. In fact, in *Martinez*, the Court acknowledged the potential for an exception to the constitutional rule but clearly stated that *Martinez* would not be the case to effectuate such a change. *See Martinez*, 132 S. Ct. at 1315.

Thaut also argues by virtue of his indigence, he was denied counsel and, in turn, a meaningful right to appeal. See, (Doc. 34 at 7). Thaut cannot establish an equal protection violation relative to the right to counsel because he has no right to counsel in postconviction proceedings. Additionally, Thaut fails to prove a discriminatory intent against him or that the postconviction and appellate laws were applied unequally to him. *See McClesky v. Kemp*, 481 U.S. 279, 292-93 (1987) (reaffirming the basic premise that an equal protection claim requires proof of "the existence of purposeful discrimination").

Moreover, while the Court appreciates Thaut's argument relative to his perceived shortcomings of Montana's postconviction procedure, it is clear that Thaut was provided the opportunity to pursue postconviction relief. Thus, the Court cannot conceive of any federal constitutional right that was abridged by the procedure implemented by the state. And, even if Thaut were to establish that the state courts violated state procedural law, this Court cannot turn such a violation into one of federal import. *See Little v. Crawford*, 449 F. 3d 1075, 1083 n. 6 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial

of due process; otherwise every erroneous decision by a state court on state law would come here as a federal constitutional question.").

Moreover, the claim should be analyzed as plead either as a specific Sixth Amendment right to counsel claim or as an equal protection claim, rather than under the more generalized due process provision. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 274 ("Where a particular Amendment 'provides an explicit textural source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). Because Thaut had no right to counsel in his postconviction proceedings, the claim is not cognizable in habeas and should be dismissed.

### B. 28 U.S.C. § 2254(d) Analysis: Claims 2, 3, 4, and 5

Claims 2, 3, and 4 allege that trial counsel Hooks provided ineffective assistance. Claim 5 alleges that appellate counsel, Wendy Holton, provided ineffective assistance on direct appeal. These claims are generally governed by the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). At this stage of the proceedings, Thaut must allege facts sufficient to support inferences that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, and a reasonable probability that but

for counsel's errors the result of the proceeding would have been different. *Id*. at 694.

Because the trial court addressed the merits of these claims and the Montana Supreme Court adopted the lower court's denials, *see Thaut v. State*, 2015 MT 238N, ¶ 7 (Mont. Aug. 11, 2015), federal habeas relief is not available unless the decision was "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). *See also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2).").

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted). The standard is "difficult to meet," and a "petitioner carries the burden of proof." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). "Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult. The standards created by *Strickland* and §2254(d) are both 'highly deferential' and

when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562

U.S. 86, 105 (2011) (internal citations omitted).

As explained below, Thaut's ineffective assistance of counsel claims should

be denied. Thaut has failed to establish that the state courts' decisions on the

merits were unreasonable. Thus, this Court must afford deference to the state

courts.

### i) Claim 2: Hooks' performance during voir dire

Thaut alleges Hooks performed deficiently in two respects during voir dire:

by failing to require a venire person to identify herself and failing to exercise either

a peremptory or for-cause challenge on juror Mavrinac. (Doc. 34 at 12-14). In

relation to the first issue, Thaut argues that because trial counsel did not require a

venire member who had been the victim of an assault to identify herself after

giving no audible response to whether the assault would result in her having bias

against Thaut, it is impossible to determine whether or not she served on Thaut's

jury. *Id*. at 12. Thaut also alleged that Mavrinac admitted she would "believe [a

correctional officer] more but [would] listen to both sides and try not to be biased."

*Id*. She also asked if the members of the jury would get to know why Thaut was

incarcerated. *Id*. Thaut believes this shows bias toward inmates. *Id*. at 14. Thaut

contends these actions constitute deficient performance and amount to *Strickland*

prejudice because such prejudice results from the presence of even one biased

14

juror. *Id.*

The trial court held Thaut failed to establish that Hooks performed deficiently during voir dire. (Doc. 9-15 at 6-7). The court found that Thaut failed to identify the juror he believed to be partial. *Id.* at 6. Additionally, although the court acknowledged a number of potential jurors had ties to the prison, all except for one indicated they could put aside their biases and be fair to both parties. *Id.* at 6-7. The court noted the one individual who maintained her partiality was removed for cause upon the State's motion. *Id.* at 7.

The record does reflect that one individual, Ms. Grady, was challenged by the State and ultimately removed for cause when she responded to the prosecutor's questioning that her history with individuals employed at the prison would not allow her to be impartial. (Doc. 9-3 at 36-38). Shortly after Ms. Grady was removed, the prosecutor inquired if any member of the jury had been the victim of a physical assault. *Id.* at 40:5-6. An unidentified woman responded that she had been punched by someone at a bar, but that her assailant left town before charges could be filed. *Id.* at 40:9-13, 18-20. The prosecutor followed up by asking if that incident would cause the potential juror to have bias against Thaut. *Id.* at 41:1-3. The individual did not provide an audible response. Thus, it is not clear whether she may have gestured or the court reporter simply could not hear the response, but the record clearly indicates that the prosecutor did not seek to remove the juror for

15

cause, nor did the defense raise any objection to the given response. *Id*. at 41. Thus, read in context, the inference is that this juror indicated she had no bias against Thaut. This inference is further supported by the trial court's finding that the only partial juror was, in fact, removed.

It is apparent from Mr. Hooks' preliminary statements to the jury that he was keenly aware of the potential for connections between the jury pool and prison employees; it was a key issue he sought to address. See, *Id*. at 45; see also (Doc. 9-13 at 4-5). Shortly into his questioning, Hooks followed up with Juror Mavrinac based upon responses she had given to the State. *Id*. at 46. After a rather lengthy exchange, Mavrinac stated she would have to listen to all of the testimony and she believed she could keep an open mind. *Id*. at 48. Mavrinac later responded to Hooks' questioning that she understood the concept of reasonable doubt and that Thaut was "definitely entitled" to the presumption of innocence. *Id*. at 54-55.

A review of the record reveals that the finding made by the state court was reasonable. Thaut has not established that Hooks performed deficiently in voir dire in relation to either Juror Mavrinac or the unidentified juror who had been the victim of an assault. Because Thaut has not made the requisite showing, this Court must give deference to the state court.

### ii)    Claim 3: Hooks' performance relative to the evaluation

As early as Thaut's initial appearance, his mental health was put at issue.

16

*See e.g.* (Doc. 9-1 at 4). Hooks was apparently the fourth attorney to represent Thaut. (Doc. 9-2 at 10:7-15). And although Thaut complained to the trial court at a pretrial hearing that he had suffered from "lifelong ADHD" (*Id.* at 14) and that he had never been provided the opportunity to meet with an impartial doctor to support this diagnosis (*id.* at 21), the record actually belies these assertions. It does not appear that a doctor ever diagnosed Thaut with ADHD. Moreover, while represented by prior counsel, Dr. Casey performed a mental health evaluation on Thaut at the Montana State Hospital. *Id.* at 22; *see also* (Doc. 9-13 at 3-4, ¶ 7; Doc. 9-15 at 8).

According to Hooks, he obtained and reviewed the report from Dr. Casey, in addition to Thaut's prison records. (Doc. 9-13 at 3-4, ¶ 7.) He also consulted with a separate mental health expert to find out if any of the records supported a defense based upon mental disease or defect. *Id.* Ultimately, Hooks determined there was neither factual nor legal support for such a defense. *Id.* Based upon these actions, the trial court determined that Hooks was not deficient for electing not to raise a defense based upon Thaut's alleged ADHD. (Doc. 9-15 at 8.) This determination was a reasonable one; Thaut has not demonstrated Hooks performed deficiently. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. This claim should be afforded deference.

### iii)    Claim 4: Hooks' decision not to seek a change of venue

The trial court held that Hooks did not provide ineffective assistance when he elected not to seek a change of venue from Powell County, because under the circumstances of Thaut's case, the motion would have been frivolous.  (Doc. 9-15 at 6.)  In arriving at this decision, the trial court determined there was not pervasive and prejudicial pretrial publicity in the community that created a presumption of prejudice against Thaut.  *Id*. at 5-6, citing *State v. Kingman*, 2011 MT 269, ¶ 19, 362 Mont. 330, 264 P. 3d 1104.  Nor did the trial court find that Thaut established through voir dire, or any other means, that the jury pool harbored actual partiality or hostility towards Thaut.  *Id*. at 6.

Thaut does not argue here that there was prejudicial pretrial publicity.  *See* (Doc. 34 at 16-18.)  Rather, he argues that because the largest two employers in Powell County are Montana Correctional Enterprises and the Montana State Prison, the pervasive familiarity between individuals in the jury pool and individuals working for corrections, made it nearly impossible for Thaut to have an impartial jury.  *Id*. at 17-18.  Thaut also argues the transcript from the jury selection makes it difficult to analyze this precise issue.  *Id*. at 18.  But in order to establish actual prejudice, Thaut must show during voir dire that potential jurors harbored "actual partiality or hostility against [him] that [could not] be laid aside." *Kingman*, ¶ 32.  Thaut has not made such a showing.

As the State points out, the Montana Supreme Court determined, upon its own independent examination of the record, that a direct appeal in Thaut's case, including the venue issue, would be wholly frivolous. (Doc. 38 at 38-39.) Further, Hooks explained that he explored the potential for a change of venue but determined, based upon his analysis of the facts of Thaut's case and the pertinent Montana law, such a motion would not be well-founded. (Doc. 9-13 at 4, ¶ 8.) Upon review of the record before this Court, it appears that there were insufficient grounds for Hooks to make a pretrial motion for change of venue based upon the presumption of prejudice due to pretrial publicity, or a motion at trial based upon actual prejudice from a partial jury pool. *Kingman*, ¶ 20. Thus, the finding of the state court relative to the change of venue issue was reasonable and should be afforded deference.

### iv)    Claim 5: Holton's Performance as Appellate Counsel

Although Thaut places blame on both trial and appellate counsel for failing to request corrective action under Mont. R. App. P. 8(6) in an effort to reconstruct the record from voir dire, it seems that Thaut assigns the greater blame to Holton as appellate counsel. As set forth above, Hooks did not lodge an objection to the responses given by the unidentified female assault victim who was questioned by the State, the inference being that she indicated she could be impartial. Also, Hooks made a determination to keep Mavrinac on the jury. Hooks maintained that

19

he "attempted to deal with the potential jurors' responses and exercise peremptory challenges appropriately." (Doc. 9-13 at 5.) There is no indication that Hooks had reason to know that the record of the voir dire proceedings was incomplete or contained inconsistent identifications of members of the venire. Thus, Thaut has failed to establish that Hooks representation, relative to the voir dire record, fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

In relation to appellate counsel, Thaut alleged in his postconviction proceedings that Holton failed to adequately review the record prior to filing her *Anders* brief. *See* (Doc. 9-15 at 8.) The trial court found that even if it were it to assume that Holton had not adequately reviewed the record, Thaut could not prevail because he could not demonstrate prejudice. *Id*. As set forth above, the Montana Supreme Court independently reviewed the record and Thaut's response to Holton's *Anders* brief prior to its determination that an appeal would be "wholly frivolous." *Id*. Thus, the trial court determined any deficient performance by Holton could not have prejudiced Thaut.

In the *Anders* brief, Holton observed there was limited follow-up on several "troubling answers" given by individuals connected to Montana State Prison or who had been the victim of an assault. (Doc. 33-8 at 25). But appellate counsel went on to argue that a claim of ineffective assistance of counsel for failure to challenge prospective jurors cannot be determined from a record that is silent as to

the lawyer's reasoning and that the claim, if it was to be heard at all, was appropriate for postconviction review. *Id*. at 26.

When a state provides for appellate review, an indigent defendant must be provided with a "record of sufficient completeness to permit proper consideration of [his] claims." *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971) (citations omitted). This does not mean, however, that a state must provide a verbatim transcript. *Id*. Holton apparently found the record to be sufficient for her to complete a review of the matter for purposes of the direct appeal. She identified the issues that would need to be explored in postconviction proceedings relative to Hooks' performance as trial counsel. While this Court acknowledges that there certainly are responses that are reflected in the record as "inaudible" during voir dire and individuals in the venire that are not identified by name, Thaut has not established that appellate counsel performed deficiently by not seeking to correct the record. The fact that Thaut was unable to effectively develop the claim of IATC relative to jury selection in his postconviction proceedings does not, by default, make appellate counsel's prior performance on direct review objectively unreasonable. To the contrary, the Montana Supreme Court affirmed Holton's assessment of Thaut's claims following its own independent review. Thus, the state courts' finding that Thaut failed to establish both prongs of the *Strickland* test in his claim against Holton was a reasonable one. It should to be afforded

deference.

## IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Thaut has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. Mr. Thaut's petition should be DENIED and DISMISSED WITH PREJUDICE. Claim 1 should be DENIED for lack of merit. Claims 2- 5 should be DENIED because they do not survive deferential review under AEDPA.

2. The Clerk of Court should be directed to enter, by separate document, a

judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Thaut may object to this Findings and Recommendation within 14

days.[1] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

novo determination by the district judge and/or waive the right to appeal.

Thaut must immediately notify the Court of any change in his mailing

address by filing a "Notice of Change of Address." Failure to do so may result in

dismissal of this case without notice to him.

DATED this 29th day of November 2016.

/s/ John Johnston
John Johnston
United States Magistrate Judge

---

[1] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.